# STATE OF MICHIGAN

# COURT OF APPEALS

ANNE M. WINTHROP,

Plaintiff-Appellant,

v

LAURA HINES DECK,

Defendant-Appellee.

UNPUBLISHED
January 8, 2019

No. 338773
Oakland Circuit Court
LC No. 2016-151187-CK

Before: GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

In this breach of contract action, plaintiff, Anne M. Winthrop, appeals as of right an opinion and order granting summary disposition to defendant, Laura Hines Deck, pursuant to MCR 2.116(C)(10) (no genuine issue of material fact, nonmovant entitled to judgment as a matter of law). We affirm.

## I. RELEVANT FACTS

This action arises out of defendant's sale of a horse to plaintiff. Defendant purchased the horse from Royal Horse Farms (RHF) in Florida and transported it to Michigan. According to the purchase agreement between RHF and defendant, RHF retained a right of first refusal to purchase the horse should defendant ever decide to sell it. After boarding the horse for a while at Highland Point Farms, defendant fell into financial hardship and stopped paying the fees associated with boarding the horse. When plaintiff learned of defendant's failure to pay for the horse's upkeep, she expressed an interest in purchasing the horse, and defendant agreed to sell. Cindy Guitar, the horse's trainer, and Cindy's husband, Thomas, brokered the sale for plaintiff.

Prior to the sale, defendant told plaintiff about RHF's right of first refusal, and plaintiff informed defendant through Cindy that she would only purchase the horse if defendant obtained RHF's waiver of the right. According to Cindy's affidavit, defendant said she had contacted RHF by telephone and the right of first refusal was "taken care of." Plaintiff agreed to purchase the horse, and defendant presented her with a bill of sale on April 30, 2015. Attached to the bill of sale was a copy of the purchase agreement between defendant and RHF bearing defendant's initials next to several paragraphs; presumably, these were relevant to her sale of the horse to plaintiff. Defendant had placed her initials next to the paragraph addressing RHF's right of first refusal, underlined the words "first," "right," and "refusal" and wrote, "spoke on phone 4/29/15." While plaintiff was signing the document, defendant asked her to write an addendum stating that

-1-

she acknowledged the terms of defendant's prior contract with RHF. Plaintiff complied. In a second handwritten addendum to the bill of sale, defendant promised to deliver the horse's registration papers to plaintiff within seven days of the sale. In compensation for the horse, plaintiff wrote a check to defendant for $4,600 and a check to defendant's trainer for $900 to cover past due training fees.

According to plaintiff's complaint, the day after she purchased the horse, defendant informed her that RHF had decided to exercise its right of first refusal and purchase the horse. The following month, RHF sued plaintiff for return of the horse and eventually reached a settlement agreement with plaintiff, wherein RHF paid plaintiff $24,000 for the horse. Shortly before signing the settlement agreement, plaintiff filed this action against defendant alleging breach of contract and fraud.[1] Plaintiff alleged that defendant breached their contract for sale of the horse by not delivering the horse's registration papers as promised and that, as a result, plaintiff incurred expenses for boarding the horse while being deprived of the use and value of the horse and by having to pay defense costs in a lawsuit by RHF because she obviously would want to put up a fight to keep the horse. In her claim for fraud, plaintiff alleged that she relied to her detriment on defendant's series of misrepresentations regarding her ownership of the horse, her ability to deliver the horse's registration papers, and her having obtained a waiver of RHF's first right of refusal.

Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10), asserting that plaintiff did not have an action for breach of contract because she had acknowledged RHF's first right of refusal in the parties' purchase agreement. Defendant further asserted that even if there had been a breach, plaintiff could not show she suffered damages when she received $24,000 from RHF, nearly $20,000 more than she paid for the horse. Defendant made the same observations with regard to plaintiff's allegations of fraud, adding that plaintiff had failed to allege any specific false statements defendant made and plaintiff relied on when purchasing the horse. Plaintiff responded by essentially reiterating the allegations she had made in her complaint.

The trial court issued a written opinion and order after hearing oral argument on defendant's motion. The court found that defendant breached the purchase agreement by failing to provide plaintiff with the registration papers for the horse, but concluded that the damages plaintiff claimed for that breach in excess of the $24,000 she had received from RHF were either speculative or unavailable by law. Regarding plaintiff's fraud claim, the trial court found that because plaintiff expressly acknowledged in the bill of sale the terms of defendant's contractual agreement with RHF, which contract was attached to the bill of sale, she could not establish her reasonable reliance on defendant's alleged misrepresentations regarding obtaining a waiver of

---

[1] Plaintiff also alleged a claim for specific performance to obtain the registration papers for the horse, but she withdrew this claim in her response to defendant's motion for summary disposition.

the right of first refusal. The court further determined that any claim for damages based on fraud would be speculative.[2]

## II. ANALYSIS

## A. STANDARD OF REVIEW

We review the grant or denial of a motion for summary disposition de novo. *Value, Inc v Dep't of Treasury*, 320 Mich App 571, 576; 907 NW2d 872 (2017). Defendant moved for summary disposition pursuant to MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual support for a claim and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011). A genuine issue of material fact " 'exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Cox v Hartman*, 322 Mich App 292, 299; 911 NW2d 219 (2017) (citation omitted).

## B. BREACH OF CONTRACT

Plaintiff agrees with the trial court's finding of a breach of contract premised on defendant's failure to provide her with registration papers for the horse, but she maintains that she is entitled to additional damages above the $24,000 she received from RHF because that amount did not sufficiently compensate her for her loss, and she claims that her additional damage claims are not speculative. We disagree.

In Michigan, a party damaged by another party's breach of contract may recover "those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). "[A] plaintiff's remedy for breach of contract is limited to damages that arise naturally from the breach" or that the parties contemplated at the time they made the contract. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 426 n 3; 751 NW2d 8 (2008). "[T]he purpose of compensatory damages . . . is to make the plaintiff whole . . . ." *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 631; 769 NW2d 911 (2009).

Plaintiff does not contend that she failed to recover the purchase price of the horse. Rather, she contends she is entitled to damages in excess of the $24,000 RHF paid her when it exercised its right to repurchase the horse. However, any losses plaintiff incurred apart from the purchase price of the horse occurred not because defendant breached the parties' contract by not

---

[2] The court observed that plaintiff "seeks to include her cost of having to defend against the action claiming a right to repurchase the horse brought by [RHF], while at the same time Plaintiff acknowledges that [RHF] retained the right of first refusal."

Plaintiff also sought recovery of statutory and reasonable attorney fees, punitive damages, and exemplary damages, but the trial court rejected plaintiff's claims for these damages, which plaintiff does not challenge on appeal.

-3-

producing the horse's registration papers, but because RHF decided to exercise its right of first refusal. Under the terms of the purchase agreement between defendant and RHF, RHF reserved a right of first refusal to repurchase the horse should defendant "at any point . . . wish to sell the horse, for any reason." Plaintiff acknowledged her awareness of this provision in the handwritten addendum to the bill of sale for the horse. Thus, to the extent that plaintiff alleges damages related to loss of possession of the horse, they are not recoverable from defendant because they were not a "direct, natural, and proximate result of the breach," *Alan Custom Homes, Inc*, 256 Mich App at 512, nor could such unrelated damages have been contemplated at the time the parties made the contract, see *Allison*, 481 Mich at 426 n 3.

Plaintiff next argues that she is entitled to damages in excess of the payment she received from RHF because she has been deprived of future additional profits she could have made from the horse. In support of this argument, plaintiff states that the horse's value grew to between $75,000 and $100,000 after RHF repurchased it. Again, however, the fact that plaintiff no longer has the horse because RHF exercised its right to repurchase the horse was not occasioned by defendant's not producing the horse's registration papers. Even if plaintiff's loss of the horse did arise naturally from defendant's breach of the parties' contract, plaintiff has offered no admissible evidence to support the validity of her claim regarding the horse's value.

Moreover, no evidence supports plaintiff's assumption that she would have had the same success with the horse as RHF may have had. Her claim for damages based on the loss of future profits is contingent on the horse's continuing success in the equestrian community where plaintiff planned to earn said profits, which can reasonably be said to " 'depend[] entirely on the occurrence of multiple contingencies which might or might not occur at some point in the future.' " *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 553; 904 NW2d 192 (2017) (citation omitted).

A plaintiff may recover damages for lost future profits in breach of contract actions, but damages " 'must be proven with a reasonable degree of certainty as opposed to being based on mere conjecture or speculation.' " *In re MCI Telecom Corp Complaint*, 240 Mich App 292, 315; 612 NW2d 826 (2000) (citation omitted). Not only has plaintiff failed to prove that she is entitled to lost profits based on defendant's breach of contract, but she has not proved the loss of profit with any degree of certainty. Accordingly, the trial court did not err by finding that she was not entitled to damages in excess of the amount she received in her settlement with RHF, and that her claim for such additional damages was speculative.

## C. FRAUD

Plaintiff argues that a genuine issue of material fact exists concerning whether defendant committed fraud in the inducement and silent fraud during the course of their dealings in the sale of the horse.

To prevail on a claim of fraud, a plaintiff must demonstrate the following six elements:

(1) that the defendant made a material representation; (2) that it was false; (3) that the defendant made the representation knowing that it was false or made it recklessly without knowledge of its truth; (4) that the defendant intended that the

plaintiff would act on the representation; (5) that the plaintiff relied on the representation; and (6) that the plaintiff suffered injury as a result of having relied on the representation. [*Lucas v Awaad*, 299 Mich App 345, 363; 830 NW2d 141 (2013).]

"Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639-640; 534 NW2d 217 (1995) (citations omitted). Silent fraud occurs where "the defendant suppresse[s] the truth with the intent to defraud the plaintiff[.]" *Lucas*, 299 Mich App at 363-364. "A plaintiff cannot merely prove that the defendant failed to disclose something; instead, a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive." *Id.* at 364 (quotation marks and citation omitted). Both fraud in the inducement and silent fraud require a plaintiff to show that he or she reasonably relied on a defendant's factual statements or omissions. *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994); *Alfieri v Bertorelli*, 295 Mich App 189, 195; 813 NW2d 772 (2012).

Plaintiff premised her fraud claim largely on allegations that defendant either misrepresented that RHF had waived its right of first refusal (fraud in the inducement), or did not tell her that RHF had not waived its right of first refusal (silent fraud). However, the court found that plaintiff's reliance on defendant's alleged misrepresentations was not reasonable given that plaintiff specifically acknowledged RHF's right of first refusal in an addendum to the bill of sale. In other words, the trial court seemed to imply that the information contained in the addendum to the bill of sale alerted plaintiff that defendant's alleged misrepresentations were untrue.

Plaintiff contends that the trial court should have considered extrinsic evidence to prove that defendant fraudulently induced her to enter into the contract.[3] "Parol evidence is generally admissible to demonstrate fraud." *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 503; 579 NW2d 411 (1998). Plaintiff submitted affidavits from herself and Cindy Guitar in which they respectively attested that defendant represented that "there were no

---

[3] Plaintiff also asserts that parol evidence is admissible to explain or augment the terms of a contract that, like the one at issue, does not contain a merger or integration clause. However, plaintiff fails to identify what language in the contract is ambiguous or requires augmentation. She asserts in her brief to this Court that the trial court determined as a matter of law that, pursuant to the contract, plaintiff had the responsibility to obtain a waiver of RHF's right of first refusal. However, we fail to see where in the opinion and order appealed from that the trial court made this determination. See *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009) ("A court speaks through its written orders and judgments, not through its oral pronouncements."). Thus, plaintiff has identified no gap or ambiguity in the contract to fill or explain by parol evidence. See *Hamade v Sunoco Inc (R&M)*, 271 Mich App 145, 166; 721 NW2d 233 (2006) (stating, "parol evidence of contract negotiations, of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous") (quotation marks and citation omitted).

issues with RHF and there would be no issues," and that the right of first refusal had been "taken care of." Contrariwise, defendant asserted in her affidavit that RHF never indicated to her that it waived its right of first refusal. Further, she stated that she clearly indicated to plaintiff that the bill of sale the parties signed on April 30, 2015, was a contingent contract that would become effective only if RHF did not repurchase the horse in accordance with its right of first refusal. These affidavits arguably create a question of material fact regarding whether defendant misrepresented to plaintiff that RHF had waived its first right of refusal. To the extent that resolution of the competing scenarios requires a credibility determination, summary disposition was inappropriate. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994) (indicating that a court may not weigh credibility in determining a summary disposition motion).

However, even if the trial court had found a genuine issue of material fact with regard to whether defendant made a material misrepresentation, the trial court properly granted defendant's motion for summary disposition because plaintiff failed to present evidence of non-speculative damages in excess of the $24,000 she received when she sold the horse back to RHF. In her brief to this Court, plaintiff does not address the issues of damages relative to the fraud claim; therefore, it is unclear whether she is claiming damages. Assuming she is, as already indicated, plaintiff presented no admissible evidence to support her claim for additional damages beyond that which she already received in exchange for the horse. Her claim of lost profits rests solely on her assumption of the horse's continued success, which in turn rests entirely on speculative future events.[4] See *Van Buren Charter Twp*, 319 Mich App at 553.

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering

---

[4] Plaintiff notes the dearth of Michigan cases involving fraudulent dealings in the sale of horses, and contends that *Perry v Green III*, 313 SC 250; 437 SE2d 150 (1993) is "very similar" to the case at bar. Cases from foreign jurisdictions are not binding, but can be persuasive. *Holton v Ward*, 303 Mich App 718, 727 n 11; 847 NW2d 1 (2014), citing *People v Campbell*, 289 Mich App 533, 535; 798 NW2d 514 (2010). We find the facts of *Perry* distinguishable from those of the instant case. With respect to damages, the plaintiff in *Perry* recovered for proven actual damages that occurred because of the defendant's conduct, and punitive damages based on the defendant's intentional obstructionist conduct over the course of six years.